IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  06-cv-00950-WYD-BNB

LEDERMAN BONDING COMPANY, an Iowa corporation; and
ADAM FISHER, an individual,

    Plaintiff(s),

v.

JODY SWEETALIA, an individual doing business as A Speedy Bail Bonds,

    Defendant(s).

---

**ORDER**

---

I.    <u>INTRODUCTION AND BACKGROUND</u>

THIS MATTER is before the Court on the Motion for Preliminary Injunction filed by Defendant Jody Sweetalla on August 12, 2006 (docket #14).  Def. Motion at 5. A hearing on the motion was held on Tuesday, October 10, 2006.

By way of background, I note that this is an action for declaratory judgment involving a trade name dispute.  Plaintiff Lederman Bonding Company ("Lederman") is the owner of the trade name "Speedy Release Bail Bonds" and has licenced this trade name to Plaintiff Adam Fisher ("Fisher") for use in Colorado in connection with a bail bond business.  In the Complaint, Lederman alleges that he applied for and received permission to use the trade name "Speedy Release Bail Bonds" for bail bonding services in the State of Colorado on May 19, 2003.  The "Speedy Release" bail bond business is located in Boulder, Colorado.  Defendant Jody Sweetalla ("Sweetalla") is

also engaged in the bail bond business in Colorado and uses the trade names "Speedy Bail Bonds" and "A-Speedy Bail Bonds." According to Plaintiffs, Sweetalla did not apply for use of the "A-Speedy Bail Bonds" trade name with the Colorado Secretary of State, but has been granted permission to use the names "Speedy Bail Bonds" and "A-Speedy Bail Bonds" by the Colorado Division of Insurance. Plaintiffs bring claims for declaratory judgment, a claim for cancellation of name under Colorado insurance law, a claim for unfair competition under the Lanham Act, and a common law claim for trademark infringement.[1] Plaintiffs seek a declaration that Sweetalla's trade name, "A-Speedy Bail Bonds," is not entitled to trademark protection, and not likely to be confused with Plaintiffs' trade name, "Speedy Release Bail Bonds." In the alternative, Plaintiffs contend that if the parties' respective trade names are deemed likely to be confused, Sweetalla should be estopped from using the "A-Speedy Release" name due to his failure to register the name with the Colorado Secretary of State.

Sweetalla brings counterclaims for violations of the Lanham Act, unfair competition and infringement, and misappropriation of trade value. In his motion for preliminary injunction, Sweetalla seeks to restrain Plaintiffs from using the trade name "Speedy Release Bail Bonds" or "any imitation of Defendant's trade name in Plaintiffs'

---

[1] Prior to the filing of this case, Sweetalla filed a Verified Complaint for Preliminary, Permanent Injunction and Damages against Fisher in the District Court for the County of Boulder, Colorado, seeking to enjoin Fisher from using the trade name "Speedy Release" in his business. The State Court issued an Order to Show Cause to Mr. Fisher as to why the requested injunction should not enter. However, prior to the commencement of a scheduled show cause hearing, Fisher and Lederman filed the instant case in this Court, and sought a stay of the state proceedings. The state court granted the request for stay.

bail bond business in the State of Colorado" throughout the pendency of this case. Def. Motion at 5.

II.     ANALYSIS

    A.     Standard for Evaluating a Motion for Preliminary Injunction

A federal court sitting in diversity must apply federal standards to preliminary injunctive relief. *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990). The primary purpose of a preliminary injunction is to preserve the status quo pending a final determination of the parties' rights. *Otero Savings and Loan Ass'n v. Federal Reserve Bank of Kansas City, Mo.*, 665 F.2d 275 (10th Cir. 1981). The burden is on the party seeking a preliminary injunction to clearly establish (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.* 269 F.3d 1149, 1154 (10th Cir. 2001); *see also SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Dominion Video*, 269 F.3d at 1154.

        1.     Substantial Likelihood of Success on the Merits

In order for Sweetalla to demonstrate a substantial likelihood of prevailing on his counterclaim for violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)), which prohibits the use of false designations of origin, and protects against service mark infringement even if the mark is not federally registered, he must demonstrate that (1)

the mark is protectable; and that (2) the opposing party's use of an identical or similar mark is likely to cause confusion among consumers." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004).[2]

In order to show that his mark is entitled to protection, Sweetalla must first show that it is "capable of distinguishing the products [or services] it marks from those of others." *Donchez*, 392 F.3d at 1216. There are five different categories of terms with respect to the protection of a mark: generic, descriptive, suggestive, arbitrary and fanciful." *Id.* (internal quotations omitted). "A mark is generic if it is a common description of products [or services] and refers to the genus of which the particular product [or service] is a species. A mark is descriptive it if describes the product's [or service's] features, qualities, or ingredients in ordinary language or describes the use to which the product [or service] is put. A mark is suggestive if it merely suggests the features of the product [or service], requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods [or services]. An arbitrary mark applies a common word in an unfamiliar way. A fanciful mark is not a

---

[2] Sweetalla notes that his common law counterclaim for unfair competition under Colorado law is evaluated under the same standard as his Lanham Act counterclaim. To succeed on his common law counterclaim, Sweetalla must demonstrate that his trade name has acquired a secondary meaning and that the opposing party has unfairly used the name. *Wood v. Woods Homes, Inc.*, 33 Colo. App. 285, 288, 519 P.2d 1212, 1214 (1974). "A secondary meaning is acquired where by prior and continuous use of a name for a long period of time in the public mind identifies the use of the name with the particular service or goods furnished by him, and thereby identifies the product by the name. *Wood*, 33 Colo. App. at 288, 519 P.2d at 1214. Use of a protected trade name by another is "unfair" when such use is "likely to deceive the ordinary consumer." *Id.*

real word at all, but is invented for its use as a mark." *Id.* Marks that are suggestive, arbitrary, and fanciful are entitled to protection. *Id.* However, a descriptive mark is protectable only if it has acquired secondary meaning in the mind of the public, and a generic mark is ineligible for protection altogether. *Id.*

Generally, a descriptive trade name acquires secondary meaning when it has been used "so long and exclusively with respect to the user's services that the purchasing public has come to understand the services are coming from a single source." *Metro Brokers, Inc. v. Tann*, 815 F.Supp. 377, 382 (D. Colo. 1993). "Whether a term has acquired a secondary meaning depends on: (1) the length and manner of its use; (2) the nature and extent of the plaintiff's advertising, promotion, and sales; (3) the plaintiff's efforts to promote a conscious connection in the public's mind between his name and the plaintiff's business; and (4) the extent to which the public actually identifies the name with the plaintiff's business." *Metro Brokers*, 815 F.Supp. at 382. A high degree of proof is required to prove the secondary meaning of a descriptive term." *Id.*

Here, Sweetalla contends that his trade names, "Speedy Bail Bonds" and "A-Speedy Bail Bonds" are descriptive in nature, and have acquired a "secondary meaning." He contends that he has used these names, and advertised and promoted these names since March of 1997, and that his business has "become quite well known to persons who might desire the services of bail bondsman." Plaintiff asserts that the terms comprising Sweetalla's name are generic and laudatory, and that even if Sweetalla could demonstrate that his trade name is descriptive, he cannot show

secondary meaning. While the term "bail bonds" is clearly generic in that it merely describes the service Sweetalla offers, I find that Sweetalla could likely demonstrate that the term "speedy" is descriptive because it describes the quality of the bail bond services offered.

However, even if Sweetalla demonstrates that his trade name is descriptive, I find that he has not shown a likelihood that he could meet the high degree of proof required to demonstrate secondary meaning. At the hearing Sweetalla testified that he has been operating a bail bond business using the trade names at issue since 1997, and he presented evidence that he licensed these trade names with the Colorado Department of Regulatory Agencies, Division of Insurance, in 1997. Sweetalla also testified that his annual advertising budget is approximately $10,000.00. Sweetalla states that he advertises his business using t-shirts, jackets, calenders, pens, cards, and advertisements in telephone and on-line directories, and in jail book and business book advertisements. While Sweetalla has certainly demonstrated an effort to promote his business and trade name through advertising, he falls short of demonstrating a likelihood that the public actually identifies his trade name with his bail bond business. Sweetalla must establish secondary meaning through the use of credible evidence or he is not entitled to injunctive relief. *Metro Brokers*, 815 F.Supp. at 382. At the hearing, Sweetalla proffered no evidence via witness testimony, affidavit, or otherwise that would demonstrate that his advertising efforts successfully linked his trade name to his bail bond business in the minds of the public.

Moreover, even if Sweetalla could show a likelihood that his trade name has

acquired secondary meaning and is entitled to protection, he must still demonstrate a likelihood of confusion between his mark and Plaintiffs' mark. *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 832-33 (10th Cir. 2005). The Tenth Circuit has outlined several factors to be considered in determining whether there is a likelihood of confusion between two marks:

> (I) the degree of similarity between the marks, including the mark's appearance, pronunciation, suggestion, and manner of display;
> (ii) strength or weakness of the plaintiff's mark;
> (iii) the intent of the alleged infringer in adopting its mark;
> (iv) similarities and differences of the parties' goods, services, and marketing strategies (also stated as the relation in use and the manner of marketing between the goods and services marketed by the competing parties;
> (v) the degree of care likely to be exercised by purchasers of the goods or services involved; and;
> (vi) evidence of actual confusion, if any.

*Heartsprings, Inc. v. Heartsprings, Inc.*, 143 F.3d 550, 554 (10th Cir. 1998); *King of the Mountain v. Chrysler Corp.*, 185 F.3d 1084, 1089-90 (10th Cir. 1999). This list is not exhaustive. *King of the Mountain*, 185 F.3d at 1090. "Some of these factors may prove more relevant than others, depending on the facts of each case," and other cases may demand consideration of factors not mentioned here. *Heartsprings*, 143 F.3d at 554. "No one factor is dispositive, and the final determination of likelihood of confusion must be based on consideration of all relevant factors." *Id.* "In every case, however, the key inquiry is whether the consumer is 'likely to be deceived or confused by the similarity of the marks." *Id.*

As an initial matter, I do not perceive a great degree of similarity between the

trade name "A-Speedy Bail Bonds" or "Speedy Bail Bonds" and the trade name "Speedy Release Bail Bonds." While both names utilize the word "speedy," only Plaintiffs' name contains the word "release." I find that the placement of the word "release" within the phrase "speedy bail bonds" in Plaintiffs' name creates a difference in the sight, sound, and meaning of the parties' trade names. *See Big O Tires, Inc. v. Bigfoot 4X4 Inc.*, 167 F.Supp.2d 1216, 1223 (D. Colo. 2001). Sweetalla makes much of the fact that he registered his trade names with the Colorado Division of Insurance in 1997, as required by C.R.S. § 10-2-701, and notes that when Plaintiffs attempted to register the name "Speedy Release Bail Bonds" in May, 2006, their application was rejected by the Division because another individual was previously granted a license under the name "Speedy Bail Bonds." The conclusions reached by the Division in assessing whether to grant Plaintiffs a license are not binding on this Court. Moreover, whether Plaintiffs were required to license their trade name prior to May, 2006, is an issue for the Division to evaluate, and has no bearing on whether Sweetalla can demonstrate a likelihood of success on his counterclaims in this case. I perceive no reason to give substantial weight to the Division's decision to reject Plaintiffs' license application.

As to the strength of Sweetalla's trade names, I note that he has shown continuous use of the names in the Denver area since 1997. However, Plaintiffs presented evidence at the hearing that another bail bonding agent operates under the name "Speedy Bail Bonds" in Pueblo, Colorado, and evidence of telephone listings for two other bail bond companies called "Speedy Bail Bonds" located in Colorado Springs

and Glenwood Springs.  "A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties."  *First Sav. Bank, F.S.B. v. First Bank System, Inc.*, 101 F.3d 645, 653 (10th Cir. 1996).  Plaintiffs also note Sweetalla has never registered his trade names with the Colorado Secretary of State.  Although the other companies using the name "Speedy Bail Bonds" operate outside the Denver area, the fact that three different businesses along the front range use a trade name identical to Sweetalla's trade name certainly diminishes the strength of his mark.

Moreover, Sweetalla offered no evidence that Plaintiffs intended to infringe on his mark by using the name "Speedy Release."  Although the parties offer identical services and both utilize advertising space in telephone directories, Plaintiffs presented evidence that their bail bond business is located in Boulder, Colorado, and that they advertise in the Boulder and Longmont DEX telephone directories.  While Plaintiffs have advertised in the Denver DEX telephone directory, they presented evidence that they did not purchase an advertisement in the 2006 Denver DEX telephone directory.

The parties presented little evidence concerning the degree of care likely to be exercised by purchasers of the goods or services involved, and I find that this factor does not weigh in favor of either party.

Turning to the final factor, the existence of actual confusion, I must conclude that Sweetalla presented very little evidence of actual confusion by customers.  While he testified that he received telephone calls from customers who expressed difficultly connecting to his business through the use of directory assistance, Sweetalla did not

-9-

demonstrate the cause of this confusion. Sweetalla did not present evidence that customers were confused about which business they were attempting to reach, or that directory assistance erroneously connected them to Plaintiffs' business when they were actually trying to reach Sweetalla's business. As Plaintiffs noted, it is possible that the source of any customer confusion was caused by one of the several other "Speedy Bail Bonds" companies in existence, rather than by Plaintiffs' company. On balance, I find that Sweetalla has not established a likelihood of confusion between his trade names and Plaintiffs' trade name. Because Sweetalla has not demonstrated a likelihood of success on the merits of his counterclaims, I need not assess whether Plaintiffs' alleged infringement would cause irreparable injury, or weight whether the threatened injury and potential harm to the alleged infringer justifies injunctive relief.

III.     CONCLUSION

In conclusion, for the reasons discussed above, it is hereby,

ORDERED that the Motion for Preliminary Injunction filed by Defendant Jody Sweetalla on August 12, 2006 (docket #14) is **DENIED**.

Dated:  October 16, 2006

> BY THE COURT:
> s/ Wiley Y. Daniel
> Wiley Y. Daniel
> U. S. District Judge